**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

UNITED STATES OF AMERICA,

     **Plaintiff,**

v.

APPROXIMATELY $683,428.55 IN UNITED STATES CURRENCY SEIZED FROM ACCOUNT NUMBER 898149728028 AT BANK OF AMERICA IN THE NAME OF MEDMED 137, INC.

     **Defendant *In Rem*.**

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, the United States of America, by and through its undersigned counsel, alleges upon information and belief, as follows:

**I.**     **NATURE OF THE ACTION**

1.     This is a civil action for forfeiture *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure, to forfeit seized funds, more fully described as:

    (i)     Approximately[1] $683,428.55 in U.S. currency seized from account number 898149728028 at Bank of America in the name of MedMed 137, Inc. (the "Defendant Asset").

---

[1] All dates and amounts referenced in this Verified Complaint are approximate.

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3.      This Court has *in rem* jurisdiction over the Defendant Asset. *See* 28 U.S.C. §§ 1345, 1355(b).

4.      Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District where the Defendant Asset was brought upon seizure. *See* 28 U.S.C. §§ 1355(b)(1), 1395.

## III.    FACTUAL ALLEGATIONS

At all times material to this Action:

### A.  The Medicare Program and Durable Medical Equipment

5.      The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who are 65 years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations.

6.      The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

7.      Individuals who received benefits under Medicare were commonly referred to as "Medicare beneficiaries."

8.      Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

9.      Medicare was subdivided into multiple program "parts."

10.     Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME").

2

11.     DME was equipment designed for repeated use and for a medical purpose, such as orthotic devices, wheelchairs, prosthetic limbs, back braces, knee braces, wheelchairs, nebulizers, and oxygen concentrators.

12.     DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the enrolled provider a Medicare "provider number."

13.     A provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

14.     Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

15.     To receive payment from Medicare, providers, including DME companies, submitted or caused the submission of claims to Medicare, either directly or through a billing company.

16.     A Medicare claim for DME reimbursement was required to set forth, among other things, the name and unique Medicare identification number of the beneficiary, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

17.     A claim for DME submitted to Medicare qualified for reimbursement only if the equipment was medically necessary for the treatment of the beneficiary's illness or injury,

prescribed by a licensed physician, and actually provided to the beneficiary as billed.

**B.  MedMed 137, Inc.**

18.     MedMed 137, Inc. ("MedMed") was an enrolled Medicare provider that purportedly provided DME to Medicare beneficiaries.

19.     MedMed was a Florida corporation located in Miami, Florida, which is within the Southern District of Florida.

20.     MedMed's Bank of America account number 898149728028 ("account ending in 8028) was opened on or about February 20, 2024, using an address at MedMed's purported office in Miami, Florida.

21.     MedMed submitted false and fraudulent claims to Medicare totaling approximately $1,128,452.20 for DME that was medically unnecessary and not provided as represented.

22.     Alleged beneficiaries of MedMed's Medicare claims stated in interviews with law enforcement agents that they did not receive, request, or need any of the DME that was billed for them and had never heard of MedMed.

23.     There were a total of six alleged providers and prescribers who accounted for 100% of the total number of claims MedMed submitted.

24.     Three of the alleged providers and prescribers, who in total accounted for approximately 62% of the Medicare claims that MedMed filed, stated in interviews with law enforcement agents that they had never heard of MedMed, and they had not prescribed the DME to the identified beneficiaries.

25.     Law enforcement attempted to interview an additional provider who accounted for 19% of the claims, but were unable to speak to him or her as he or she was incapacitated and lacking the capacity to communicate prior to MedMed's incorporation, which was inclusive of the

time when MedMed billed his or her NPI number for DME provided to the beneficiaries.

26.     Medicare records show that an additional provider who allegedly prescribed DME and accounted for 19% of MedMed's Medicare claims had previously withdrawn from the Medicare program, had his or her NPI deactivated over a decade before MedMed claimed to have supplied beneficiaries with DME prescribed/referred by him or her, and a beneficiary stated that he or she was not familiar with this provider.

27.     On or about December 31, 2024, agents from the National Council of Compensation Insurance ("NCCI") and law enforcement agents visited MedMed's purported office in Miami, Florida, observed it did not have a permanent visible sign with the supplier's business name posted on the facility, but agents spoke with the front desk receptionist, an individual with the initials N.D.

28.     Law enforcement agents later determined that N.D. was previously convicted of conspiracy to commit health care fraud and sentenced to 24 months imprisonment and ordered to pay $1,355,000.00 in restitution. *See United States v. Niurka Donate*, et. al., No. 14-CR-20717-RNS (S.D. Fla.); Judgment, 14-CR-20717-RNS, Dkt. No. 90.

29.     On or about April 15, 2025, April 23, 2025, and May 1, 2025, law enforcement agents visited MedMed's purported office in Miami, Florida, during operating hours and found it closed during each visit. There were no signs indicating MedMed was an active business.

C. **Defendant Asset**

30.     From on or about March 10, 2025, through on or about April 9, 2025, as a result of claims for reimbursements, Medicare deposited approximately $733,419.00 in U.S. currency into MedMed's account ending in 8028. This $733,419.00 in U.S. currency constituted 100% of the MedMed's account ending in 8028's total deposits during that time period.

31.     Analysis of MedMed's account ending in 8028 revealed that $683,428.55 in U.S. currency on deposit on or about April 17, 2025, which was entire balance of the account at the time, was traceable to Medicare reimbursements.

32.     On or about October 9, 2025, law enforcement agents served a federal seizure warrant on Bank of America for the balance of the MedMed's account ending in 8028. *See* Case No. 25-MJ-03950-D'ANGELO (S.D. Fla.).

33.     Pursuant to that seizure warrant, Bank of America remitted $683,428.55 in U.S. currency from MedMed's account ending in 8028 to the Federal Bureau of Investigation.

34.     The $683,428.55 in U.S. currency, which constitutes the Defendant Asset, was seized by the Federal Bureau of Investigation.

## IV.     BASIS FOR FORFEITURE

35.     Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a specified unlawful activity or a conspiracy to commit such offense is subject to civil forfeiture.

36.     Pursuant to 18 U.S.C. § 1956(c)(7)(F), any act or activity constituting an offense involving a "Federal health care offense" constitutes a specified unlawful activity.

37.     Health care fraud, in violation of 18 U.S.C. § 1347, is a "Federal health care offense." *See* 18 U.S.C. § 24.

### FIRST CLAIM
### Proceeds of Health Care Fraud
### 18 U.S.C. § 981(a)(1)(C)

38.     The factual allegations in paragraphs 1 through 34 are re-alleged and incorporated by reference as if fully set forth herein.

39.     As set forth above, the Defendant Asset is property that constitutes or is derived

from proceeds traceable to health care fraud in violation of 18 U.S.C. § 1347, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

40.    Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**WHEREFORE**, Plaintiff, the United States of America, requests that the Clerk of the Court issue a warrant for the arrest *in rem* of the Defendant Asset; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Asset; that the Defendant Asset be forfeited and condemned to the United States of America; and for such other and further relief as may be deemed just, necessary and proper.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:    /s/ Brian H. Zack_____
Brian H. Zack
Assistant United States Attorney
Florida Bar No. 1000416
United States Attorney's Office for
the Southern District of Florida
99 NE 4th Street, Suite 700
Miami, Florida 33132
Telephone: (305)-961-9407
Email: Brian.Zack@usdoj.gov

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Alexandria Davis, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the Federal Bureau of Investigation and that I have read the foregoing Verified Complaint for Forfeiture In Rem and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement agents, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

Executed on this 18th of June 2026.

Alexandria Davis, Special Agent,
Federal Bureau of Investigation

8